IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**ROY EDWIN PENNINGTON,**

     **Plaintiff,**

**v.**                               **Case No.: 2:20-cv-00452**

**ANDREW M. SAUL,**
**Commissioner of the**
**Social Security Administration,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Brief in Support of Judgment on the Pleadings, and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 12, 13).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the

pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.   <u>Procedural History</u>

In April 2018, Roy Edwin Pennington ("Claimant"), completed applications for DIB and SSI, alleging a disability onset date of February 15, 2018 due to his "legs stay[ing] swollen and back pain all the time." (Tr. at 190-203, 217). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 12). Claimant then filed a request for an administrative hearing, which was held on June 27, 2019 before the Honorable Francine A. Serafin, Administrative Law Judge. (Tr. at 28-60). By written decision dated August 15, 2019, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 9-27). The ALJ's decision became the final decision of the Commissioner on June 15, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11). Claimant filed a Brief in Support of Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 12, 13). Consequently, the matter is fully briefed and ready for resolution.

## II.   <u>Claimant's Background</u>

Claimant was 41 years old on his alleged onset date and 43 years old on the date of the ALJ's decision. He communicates in English, has the equivalent of a high school education, and previously worked as a municipal maintenance worker. (Tr. at 56, 216, 218).

### III.   <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments

do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2022. (Tr. at 14, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since February 15, 2018, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant's severe impairments included the following: degenerative disc disease of the lumbar spine, morbid obesity, chronic venous insufficiency with edema of the lower extremities, severe obstructive sleep apnea, and diabetes mellitus. (Tr. at 15, Finding No. 3).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 15-16, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

[T]he residual functional capacity to perform sedentary work as defined in

20 CFR 404.1567(a) and 416.967(a) except he can only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He should avoid frequent exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, and other poor ventilation. He should avoid frequent exposure to workplace hazards such as moving machinery or unprotected heights.

(Tr. at 16-20, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 20, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 20-21, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1976 and was defined as a younger individual age 18-44 on his alleged disability onset date; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 20, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a document preparer, charge account clerk, or assembler. (Tr. at 20-21, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 21, Finding No. 11).

## IV.   Claimant's Challenges to the Commissioner's Decision

Claimant asserts three challenges to the Commissioner's decision. He argues that a fair review of the evidence demonstrates that (1) the ALJ's analysis of his subjective symptoms is "fatally flawed;" (2) he cannot perform work at any exertional level; and (3)

it would have been "more reasonable to adopt" the testimony of the VE, who stated that a person would not be retained by his employer if he was off-task 15 percent or more of the workday or absent from work two or more days per month. (ECF No. 12 at 4-7). In response to Claimant's challenges, the Commissioner contends that the ALJ's decision is supported by substantial evidence, including Claimant's sparse, conservative treatment records and the opinion evidence. (ECF No. 13 at 8-9).

## V.    Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The information that is most pertinent to Claimant's challenges is summarized as follows:

### A. Treatment Records

On February 16, 2018, Claimant presented to Karen Bailey, PA-C, at Cabin Creek Health Center. He complained of bilateral lower extremity edema, stating that he wore compression stockings for a few weeks, but they did not help. (Tr. at 296). Claimant explained that he worked as the "maintenance guy" for the City of Dunbar Sanitary Board, and the edema was worse when he was "on his feet" at work. (*Id.*). Claimant also reported intermittent back pain with numbness/tingling that radiated into the posterior of his right leg, but he stated that he was not experiencing those symptoms during his appointment. (*Id.*). On examination, Claimant had 1+ pitting edema bilaterally without redness or warmth. (*Id.*). He weighed 396 pounds. (Tr. at 297). PA-C Bailey prescribed medications, including Lasix; ordered tests; and offered to refer Claimant to a medical weight loss clinic, but Claimant declined. (Tr. at 296-97).

Claimant returned to PA-C Bailey on February 27, 2018. He continued to complain of low back pain. (Tr. at 293). However, Claimant stated that ibuprofen "really helped" and he denied radiculopathy symptoms. (*Id.*). Claimant had trace bilateral lower

extremity edema, but he ambulated normally. (Tr. at 294). He again related that the edema was worse when he was on his feet at work, and it was better when he elevated his legs. (*Id*.). PA-C Bailey increased Claimant's dosage of Lasix, ordered a metabolic panel and venous ultrasound, and referred Claimant to a cardiologist and weight loss specialist. (Tr. at 294).

On March 7, 2018, Claimant saw a different primary care provider, Tracie F. Bonner, NP-C, at Charleston Internal Medicine because he felt like he was not "getting helped" at Cabin Creek Health Center. (Tr. at 314). His active conditions included lower leg edema, daytime sleepiness, snoring, and fatigue. (*Id*.). Claimant told Nurse Bonner that Lasix somewhat reduced his symptoms, but it was not "helping as much." (*Id*.). He related that his cardiac tests thus far did not show any abnormalities. (*Id*.). Claimant gained weight, currently weighing 406 pounds. (Tr. at 314, 315). On examination, he had +2 edema in his lower extremities, but no tenderness, ecchymosis, instability, crepitations, or range of motion difficulties. (Tr. at 315). Nurse Bonner referred Claimant for a sleep study, as well as a lymphedema clinic. (Tr. at 315-16). She also prescribed Lasix and valsartan. (Tr. at 316).

Nurse Bonner provided Claimant a work excuse dated March 7, 2018, which stated that Claimant was under her care from March 7, 2018 to March 9, 2018, and he could return to work on March 10, 2018. (Tr. at 313). Thereafter, Claimant called Nurse Bonner's office five times per day on March 26 through 28, 2018 concerning "disability papers" that Claimant wanted Nurse Bonner sign. (Tr. at 318). She declined to sign the forms, stating that she did not feel comfortable signing them, and Claimant had a chronic, but not acute, problem. (*Id*.).

On December 3, 2018, Claimant returned to his previous provider, PA-C Bailey at

Cabin Creek Health Center. He reported lower extremity edema, but he admitted that he did not wear his compression stockings or appear for his cardiology appointment and further tests. (Tr. at 366). Claimant also complained of lower back pain that sometimes radiated into his right thigh. (Tr. at 367). He said that the pain began five years earlier when another car hit him "head on going about 90 miles per hour." (*Id*.). Claimant gained an additional 64 pounds and weighed 468 pounds. (Tr. at 365, 367). He had trace edema in his lower extremities and reduced range of motion and tenderness in his lumbosacral spine, but he still ambulated normally. (Tr. at 367). PA-C Bailey prescribed Mobic, Lasix, compression stockings; ordered a lumbosacral x-ray; and referred Claimant to a cardiologist and physical therapist. (Tr. at 368). Claimant's morbid obesity was caused by his intake of excess calories. (*Id*.). However, Claimant again declined PA-C's Bailey offer to refer him to a weight loss clinic, stating that he would try to lose weight on his own. (*Id*.).

Cardiologist Jashvantlal K. Thakkar, M.D., examined Claimant on January 4, 2019. He did not find any cardiovascular abnormalities. (Tr. at 333-34). He diagnosed Claimant with benign hypertension without congestive heart failure and leg edema. (Tr. at 334). Several months later, on April 9, 2019, Claimant underwent the lumbosacral x-ray that PA-C Bailey ordered to evaluate his complaints of back pain. The study showed mild degenerative disc disease involving the facets of Claimant's lower lumbosacral spine, as well as mild scoliosis. (Tr. at 351).

Claimant followed up with PA-C Bailey on April 24, 2019. He weighed 442 pounds after losing 26 pounds. (Tr. at 358). He attributed his weight loss to the fact that he began taking metformin and modified his lifestyle. (Tr. at 360). Claimant's other medical problems included hypertension, low back pain, foot calluses, thickened toenails, and

nicotine dependence. (Tr. at 360-61). He claimed that Mobic was only providing minimal relief for his back pain, although he admitted that he did not attend physical therapy as ordered. (Tr. at 360). On examination, Claimant had edema, but he was ambulating normally with normal pulses and sensation in his feet. (*Id.*). P.A. Bailey advised Claimant to take his blood pressure medication compliantly, and she prescribed diabetes testing supplies and Mobic. (Tr. at 360-61).

### B. *Evaluations, Opinions, and Prior Administrative Findings*

On August 6, 2018, state agency physician Narendra Parikshak, M.D., assessed Claimant's RFC based upon her review of Claimant's records. She concluded that Claimant could perform work at the sedentary exertional level, including sitting for about six hours in an eight-hour day; frequent balancing; occasional climbing of ramps/stairs, stooping, kneeling, crouching, and crawling; and never climbing ladders/ropes/scaffolds; no moderate exposure to extreme heat or hazards; and no concentrated exposure to extreme cold, wetness, and humidity. (Tr. at 67-68).

The following month, on September 29, 2018, Karen Jewell, APRN, performed a consultative examination of Claimant. She recorded that Claimant's gait was steady, he could stand on one leg without losing balance, he did not require any assistive devices to ambulate, and his sensory and motor function were preserved. (Tr. at 328, 329). Claimant appeared comfortable in the sitting and supine positions, and he could flex at the hips in a seated position. (Tr. at 328). He had 1-2+ pitting edema and redness in his lower extremities without hair loss, ulcers, or warmth. (Tr. at 328). His cardiovascular examination was normal, including strong peripheral pulses with no evidence of peripheral vascular insufficiency, and he had no fluid, laxity, or crepitus of the knees, ankles, or feet. (Tr. at 328, 329). Claimant estimated his weight to be 440 pounds at the

time of the examination. (Tr. at 327). Nurse Jewell concluded that Claimant's back pain was likely related to his very large body habitus. (Tr. at 329). She diagnosed him with lumbago and swelling of the lower extremities. (*Id.*).

On October 23, 2018, Dr. Parikshak reviewed Claimant's updated records, including Claimant's consultative examination report. (Tr. at 65). She affirmed her initial RFC assessment, noting that it was consistent and supported by the medical evidence of record, and there was no new evidence to suggest increased functional limitations. (*Id.*). Rabah Boukhemis, M.D., affirmed Dr. Parikshak's RFC assessment at the reconsideration level of review on December 26, 2018. (Tr. at 88-89).

### C. Claimant's Statements

Claimant testified during his administrative hearing on June 27, 2019. He stated that he worked as a municipal maintenance worker until mid-2017. (Tr. at 54). His duties included driving a truck and manual labor, such as putting in sewer lines and working in ditches. (Tr. at 54-55). Claimant testified that he "just couldn't" do the job anymore. (Tr. at 55). He reported that he tried to go back to work in March 2018, but his boss sent him home because he was in pain. (Tr. at 34). In terms of functional abilities, Claimant testified that he could only sit for an hour or so before he had to lie down, which usually meant reclining in his chair with his feet elevated. (Tr. at 40). According to Claimant, even sitting worsened his edema. (Tr. at 42-43). He rated his average back and leg pain seven on a ten-point scale, but he stated that it was as bad as 10 if he walked a lot. (Tr. at 47-48). Claimant stated that his typical daily activities included sitting in the porch swing, helping with sweeping, and mostly just sitting in the recliner. (Tr. at 48-49).

### VI.   Standard of Review

The issue before the Court is whether the final decision of the Commissioner is

based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) … requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII.  **Discussion**

Claimant challenges the ALJ's subjective symptom analysis and RFC finding, including the ALJ's consideration of the VE's testimony. Each argument is considered below, in turn.

### A.    Subjective Symptoms

Claimant argues that the ALJ's credibility determination is without merit based on (1) the findings of the consultative examiner, Dr. Jewell, that Claimant suffered from lumbago and swelling in his lower extremities that was red and ruddy in color and (2) the treatment notes from Charleston Internal Medicine diagnosing Claimant with lower leg edema, daytime sleepiness, snoring, fatigue, hypertension, lymphedema, and morbid obesity. (ECF No. 12 at 5).

Under the applicable Social Security rulings and regulations, an ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. §§ 404.1529, 416.929 (effective March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id.* §§ 404.1529(a), 416.929(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from

performing basic work activities. *Id.* §§ 404.1529(a), 416.929(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

In *Hines v. Barnhart*, the Fourth Circuit stated that:

13

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for

that of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ clearly performed the two-step process. The ALJ considered Claimant's allegations of hip, leg, back, and shoulder pain; obesity; and reduced functional ability to stand, walk, sit, lift, and carry. (Tr. at 17). After considering the evidence, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (*Id*.). However, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id*.). Regarding Claimant's alleged back pain that worsened with walking, the ALJ noted the normal and mild objective findings during Claimant's consultative examination and other physical examinations, lumbosacral x-ray indicating only mild degenerative disc disease and mild scoliosis, and conservative treatment consisting of a prescription for Mobic. (Tr. at 17-18). The ALJ also considered Claimant's daily activities; the clinical findings concerning Claimant's obesity, lower extremity edema, sleep apnea, and diabetes; and the opinion evidence and prior administrative medical findings. (Tr. at 17-19). The ALJ noted that Claimant's allegations of debilitating symptoms were inconsistent with Claimant's imaging, physical examination findings, and routine and

conservative medical treatment history. (Tr. at 17). However, the ALJ did not disregard the evidence of Claimant's pain, limitations, or other symptoms entirely. Indeed, although the ALJ did not conclude that Claimant was disabled, the ALJ assessed that Claimant was limited to less than a full range of sedentary work.

Claimant does not identify any flaw in the ALJ's subjective symptom analysis. Rather, he simply lists medical evidence and asks the Court to review it and reach a different conclusion than the ALJ. The ALJ considered the evidence that Claimant cited and provided well-reasoned support for his analysis of it. Furthermore, in accordance with SSR 16-3p, the ALJ did not impermissibly evaluate Claimant's truthfulness or character, but specifically compared Claimant's allegations to the evidence of record to evaluate his subjective complaints.

While Claimant believes that the evidence incontrovertibly substantiates his allegations, there is undoubtedly more than a scintilla of evidence to support the ALJ's finding that Claimant's impairments were not debilitating. Despite Claimant's back pain, obesity, edema, and other impairments, Claimant ambulated normally with normal pulses and sensation in his feet; his cardiovascular findings were normal; his back issues were described as mild in severity; he was treated conservatively with medications and offers to refer him to a physical therapist, weight loss clinic, and lymphedema clinic; and his primary care provider declined to sign his "disability papers." (Tr. at 318, 328, 329, 333, 334, 351, 360, 361, 367, 368).

Therefore, although Claimant disagrees with the ALJ's analysis and conclusions, he does not identify any material conflicting evidence that the ALJ failed to consider or any misstatement of the evidence of record. Claimant asks the Court to reweigh the evidence and find him disabled. However, as previously explained, the Court cannot

substitute its judgment for the ALJ. *Hays*, 907 F.2d at 1456. Rather, the Court can only scrutinize the evidence to determine if it is sufficient to support the ALJ's conclusions. In this case, that standard is unequivocally met. As shown above, the ALJ properly considered Claimant's statements, his daily activities, and the medical evidence to evaluate the intensity, persistence, and severity of Claimant's reported symptoms. Claimant offers nothing to rebut the ALJ's well-reasoned conclusions and specific citations to the record. Therefore, the undersigned **FINDS** that substantial evidence supports the ALJ's subjective symptom analysis.

### B. RFC

Claimant next argues that it "is obvious" that his impairments preclude employment at any exertional level. (ECF No. 12 at 6). He claims that he cannot perform sedentary work because, "without question," he cannot sit for six hours in an eight-hour workday. (*Id*.).

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id*. According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." *Id.*  Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As previously discussed, the ALJ thoroughly considered Claimant's allegations, treatment records, objective findings, test results, consultative examination, daily activities, and the various opinions and administrative medical findings offered in this matter. Claimant does not identify any relevant functions or evidence that the ALJ

overlooked in assessing his RFC, nor does he identify inadequacies in the RFC discussion that frustrate meaningful review. Claimant emphasizes his claimed inability to sit for six hours in a workday and the vocational impact of his obesity. However, the ALJ specifically considered those factors. The ALJ noted Claimant's allegations, including his testimony that he could only sit for one hour at a time, and his morbid obesity with a body mass index as high as 65.3. (Tr. at 17, 18). Yet, the ALJ considered that, despite his impairments, Claimant exhibited normal muscle strength and sensation, unlabored breathing, the ability to ambulate normally, and mild x-ray findings. (Tr. at 17-19). In addition, the ALJ cited that Claimant received conservative treatment and the state agency physicians assessed that he could perform work at the light exertional level. (*Id*.).

Claimant proposes that the Court independently review the record and determine that he is not capable of working at any exertional level. However, the role of the Court is not to second-guess the ALJ's RFC assessment, but to review it, along with the record, to determine if the ALJ correctly applied the law and the decision is supported by substantial evidence. In this case, the record supports the ALJ's analysis. During his consultative examination, Claimant's gait was steady, he could stand on one leg without losing balance, he did not require any assistive devices to ambulate, and his sensory and motor functions were preserved. (Tr. at 328, 329). He appeared comfortable in the sitting and supine positions, and he could flex at the hips in a seated position. (Tr. at 328). Although Claimant had 1-2+ pitting edema and redness in his lower extremities, there was no hair loss, ulcers, or warmth. (Tr. at 328). In addition, Claimant's cardiovascular examination was normal, including strong peripheral pulses without evidence of peripheral vascular insufficiency, and he had no fluid, laxity, or crepitus of the knees, ankles, or feet. (Tr. at 328, 329). Clinical records likewise noted that Claimant ambulated normally with normal

pulses and sensation in his feet. (Tr. at 360). Also, as the ALJ referenced, Claimant was treated conservatively with medications, his x-ray showed mild degenerative disc disease and mild scoliosis, and the experts in this matter concluded that Claimant could perform light-level work. (Tr. at 65, 67-68, 88-89, 294, 296-97, 315-16, 351, 368). Therefore, there exists more than a scintilla of evidence to support the ALJ's assessment that Claimant can perform a reduced range of sedentary work despite his obesity, edema, and other issues.

It is evident, here, that the ALJ considered the relevant evidence concerning Claimant's functional abilities and articulated a cogent, well-supported RFC assessment with specific citations to the record. The ALJ considered the evidence cited by Claimant, and all other evidence, in determining Claimant's RFC. Therefore, the undersigned **FINDS** that the ALJ's RFC assessment is supported by substantial evidence.

### C.  VE Testimony

In his final challenge, Claimant argues that it "is more reasonable to adopt the testimony of the Vocational Expert who stated that [Claimant] would not be retained by an employer if he was absent from work two (2) or more days a month or was off-task 15% or more during the normal workday." (ECF No. 12 at 6-7). He contends that a "fair review of the evidence including [Claimant's] testimony reflects that [Claimant] would be absent and/or off-task in excess of the aforesaid acceptable tolerances." (*Id*.).

In order for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). To frame a proper hypothetical question, the ALJ must first translate the claimant's physical and mental impairments into an RFC that is supported by the evidence; one which adequately reflects the limitations imposed by the claimant's

impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir. 2006). A hypothetical question will be "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Id.* (citing *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (noting that hypothetical question "need only reflect those impairments supported by the record"). However, "[t]he Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005).

In this matter, the ALJ questioned the VE about employers' tolerances for their employees being off-task or absent from work. (Tr. at 58). Specifically, the ALJ inquired whether there were any jobs available to a hypothetical individual who was off-task for 15 percent of the workday or absent from work two or more days per month. (*Id.*). The VE responded that there were no jobs for such individual. (*Id.*). Claimant indicates that the ALJ should have concluded based on that testimony that he was disabled. However, he does not offer any evidence that he would be off-task or absent from work that frequently. To the contrary, Claimant's x-ray, consultative examination, and treatment records did not document any extreme limitations, symptoms, or impairments to the severity that he would be off-task 15 percent of the workday or miss work two or more days per month. Therefore, there was no justification for the ALJ to rely on the VE's response to the hypothetical question concerning an individual with those limitations.

Accordingly, the undersigned **FINDS** that the ALJ properly relied on the VE's testimony at steps four and five of the sequential evaluation.

## VIII.   <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 12); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 13); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party,

Judge Berger, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  May 25, 2021

Cheryl A. Eifert
United States Magistrate Judge